**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**KATHLEEN DOBSON,**

                          **Plaintiff,**                03-CV-0680(Sr)

v.

**CITIGROUP, INC.,**

                          **Defendant.**

---

## DECISION AND ORDER

In accordance with 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings in this case, including entry of final judgment. Dkt. #12.

Currently before the Court is defendant Citigroup, Inc.'s motion for summary judgment. Dkt. #15. For the following reasons, Citigroup Inc.'s motion for summary judgment is granted.

## BACKGROUND

On or about September 11, 2003, plaintiff commenced this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") seeking a declaratory judgment, reinstatement of her medical coverage, back pay and attorney's fees and costs. Dkt. #1. As alleged in the complaint, plaintiff, Kathleen Dobson, had been a full-time, salaried employee of Travelers Insurance Company ("Travelers"). At

the time plaintiff's employment with Travelers ceased, Travelers was a wholly-owned subsidiary of Citigroup, Inc. ("Citigroup"). *Id*. at ¶ 4. Specifically, plaintiff alleges that she was employed by Travelers (Citigroup) for over five years and that her employment ended in September 2001 due to a disability. *Id*. at ¶ 10. Plaintiff further alleges that she was disabled at the time her employment was terminated and that Travelers (Citigroup) wrongfully denied her request for continuing medical coverage. *Id*. at ¶¶ 11-12.

On or about April 14, 1995, plaintiff commenced a proceeding before the New York State Workers' Compensation Board seeking benefits from Travelers resulting from alleged occupational injuries to her right hand, elbow, shoulder and left elbow. Dkt. #15-2, ¶ 3. Thereafter, plaintiff and Travelers agreed to settle her workers' compensation claim pursuant to section 32 of New York's Workers' Compensation Law and the terms of a written Settlement Agreement. *Id*. at ¶ 4. The Settlement Agreement was approved by the Workers' Compensation Board on October 26, 2001. *Id*. The terms of the Settlement Agreement provided in part that,

> [c]laimant agrees that she will not assert any claim, either in law or in equity, in any other forum against Travelers for the problems with her bilateral hands, bilateral elbows or right shoulder or any other alleged direct or consequential injury and that she does hereby expressly release Travelers from any such liabilities in return for the consideration to be paid pursuant to the terms of this settlement agreement.

Dkt. #15-5, p.5, ¶ 4. The Settlement Agreement further provided that claimant agreed to resign from Travelers and agreed never to reapply for employment with Travelers or

with any Citigroup subsidiary.  *Id*. at ¶ 6.  Moreover, the parties agreed that once approved by the Workers' Compensation Board, the Settlement Agreement would be final and binding and that it may not later be appealed to or reviewed by any court or the Workers' Compensation Board.  *Id*. at ¶ 8.  In exchange for the promises discussed above, Travelers agreed to pay plaintiff a lump-sum payment of $125,000.  Dkt. #15-5.

Plaintiff argues that her final day of employment with Travelers was on or about September 25, 2001 and further, that by October 1, 2001, she had exhausted all of her "unused vacation, sick, Family Medical Leave Act ("FMLA") and other leave of absence time-off from work."  Dkt. #18-2, ¶ 5.  Additionally, plaintiff maintains that she was informed that upon the exhaustion of all available unused time off, her job would no longer be "held open."  *Id*. at ¶ 6.  According to Travelers, after she resigned, plaintiff "elected to continue and paid for over one year of health benefits under the Consolidated Omnibus Budget Reconciliation Act ("COBRA")."  Dkt. #15-5, ¶ 8.

By letter dated May 30, 2002, plaintiff's counsel asked Travelers to continue her medical coverage as a "terminated disabled employee."  Dkt. #15-5, ¶ 9; Dkt. #15-9.  On June 6, 2002, Travelers' counsel Richard Fortier advised plaintiff's counsel that plaintiff was not a terminated employee because she resigned pursuant to the terms of the Settlement Agreement and that she was not in "disability status" at the time of her "resignation" and therefore, she did not qualify for continued benefits.  Dkt. #15-5, ¶ 10; Dkt. #15-10.  Plaintiff's counsel appealed the denial by letter dated September 9, 2002 and continued to insist that she was entitled to continued medical

benefits because she was both "disabled" and "terminated." Dkt. #15-5, ¶ 11; Dkt. #15-11. Finally, by letter dated March 24, 2003, Citigroup's Secretary of the Plans Administration Committee, Richard M. Green, Esq., replied to plaintiff's Notice of Appeal and reiterated that by executing the Settlement Agreement, plaintiff "surrendered the right to seek further employee benefits." Dkt. #15-5, ¶ 12; Dkt. #15-12.

## DISCUSSION AND ANALYSIS

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted). A party seeking to defeat a motion for summary judgment,

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

**Plaintiff's "Resignation" or "Termination"**

Citigroup argues that its motion for summary judgment should be granted because plaintiff's claim that she was "disabled" when she was "terminated" and therefore, her employee benefit plan should be restored fails as a matter of law. Specifically, Citigroup maintains that plaintiff was not terminated, in fact, she voluntarily resigned from her employment pursuant to the terms of a Settlement Agreement. The Settlement Agreement, signed by the parties on October 2, 2001, but not approved by the Workers' Compensation Board until October 26, 2001, provides in pertinent part,

"[t]he claimant agrees to resign from the Travelers Insurance Company and that she will never reapply for employment with Travelers Insurance Company or with any Citygroup [sic] subsidiary." Dkt. #15-5, p.5, ¶ 6. In addition to the foregoing, Citigroup argues that the "[S]ettlement [A]greement demonstrates that plaintiff was not even disabled at the time she resigned." Dkt. #15-15, p.3. Although Citigroup does not elaborate on this argument, the Court notes that the Settlement Agreement states, in part, "since the claimant only loses brief periods of intermittent lost time the last period of lost time is from 4/18/01 to 7/12/01." Dkt. #15-5, p.2.

In sharp contrast, plaintiff argues that notwithstanding the fact that the Settlement Agreement provides that she will resign her employment with Travelers, she was effectively terminated from her employment prior to the October 26, 2001 approval (and effective date) of the Settlement Agreement. Specifically, in her memorandum of law submitted in opposition to Citigroup's motion for summary judgment, plaintiff's counsel argues that on or about September 25, 2001, plaintiff was informed that upon the exhaustion of all of her vacation and other leave time, her employment position would not be held open for her and that her employment would be terminated. Dkt. #18, p.2. Accordingly, because plaintiff did not have sufficient vacation or other leave time to October 26, 2001, plaintiff insists that her employment was terminated and she was unable to resign as contemplated in the Settlement Agreement. The Court notes that in opposition to Citigroup's motion for summary judgment, plaintiff failed to submit an affidavit or other evidence in admissible form to substantiate the foregoing arguments. During oral argument, plaintiff's counsel explained that her client had been

ill and was in Florida and therefore, she was unable to submit an affidavit. Notwithstanding plaintiff's counsel's explanation of her "inability" to submit an affidavit in opposition to Citigroup's motion for summary judgment, this Court may not consider those "facts" set forth in plaintiff's memorandum of law because they were not submitted in proper, admissible form. See Fed.R.Civ.P. 56.

Based on the record before this Court consisting only of evidence in admissible form, this Court finds that consistent with the terms of the Settlement Agreement, which plaintiff makes no attempt to disavow, plaintiff resigned her employment with Travelers.

**CitiGroup's Decision Not to Reinstate Medical Coverage**

**Standard of Review**

In *Firestone Tire & Rubber Co. v. Bruch*, the Supreme Court of the United States held that "a denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. 101, 115 (1989). Where the plan has afforded its administrator discretion to interpret the terms of the plan, a reviewing court will uphold the Plan's determination unless it is arbitrary and capricious. *Id.* In accordance with this standard, a court will overturn a decision to deny benefits only if it was "without reason,

unsupported by substantial evidence or erroneous as a matter of law." *Pagan v. Nynex Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995) (internal quotation omitted).

In the instant case, the Travelers Group Medical Plan, Dental Plan, Flexible Spending Accounts, Vision Plan Summary Plan Descriptions unmistakably conferred discretionary authority to the Plan Administrator to operate and administer the plan. Dkt. #15-13, p.4. Specifically, the Notice states,

> The Plan Administrator shall have such powers as may be necessary to carry out the provisions of these Plans, including the power and discretion to determine all benefits and resolve all questions (including all questions of fact) pertaining to the administration, interpretation and application of plan provisions, either by rules of general applicability or by particular decisions.

*Id*. Accordingly, following the reasoning set forth in *Bruch*, because the plan at issue here has afforded its administrator discretion to interpret the terms of the plan, this Court will review the determination consistent with the arbitrary and capricious standard.

In support of its motion for summary judgment, Citigroup maintains that its decision to deny plaintiff's request for reinstatement of benefits was not arbitrary and capricious. Rather, Citigroup argues that by reason of the terms of the Settlement Agreement between plaintiff and Travelers whereby the parties agreed to settle plaintiff's workers' compensation claim pursuant to section 32 of New York's Workers' Compensation Law, plaintiff resigned from her employment in exchange for the payment of $125,000. As a result, Citigroup further argues that plaintiff "surrendered all benefits attendant to her former employment with the Travelers." Dkt. #15-15, p.9.

Specifically, in its June 6, 2002 letter denying plaintiff's request to continue her medical coverage until a normal date of retirement, Travelers' counsel, Richard Fortier, advised plaintiff's counsel that plaintiff was not a terminated employee because she resigned pursuant to the terms of the Settlement Agreement and further, that she was not in "disability status" at the time of her "resignation" and therefore, she did not qualify for continued benefits. Dkt. #15-5, ¶ 10; Dkt. #15-10. Plaintiff's counsel appealed the denial by letter dated September 9, 2002 and continued to insist that plaintiff was entitled to continued medical benefits because she was both "disabled" and "terminated." Dkt. #15-5, ¶ 11; Dkt. #15-11. Finally, by letter dated March 24, 2003, Citigroup's Secretary of the Plans Administration Committee, Richard M. Green, Esq., replied to plaintiff's Notice of Appeal and reiterated that by executing the Settlement Agreement, plaintiff "surrendered the right to seek further employee benefits." Dkt. #15-5, ¶ 12; Dkt. #15-12.

In support of her request for medical benefits, plaintiff relies on a highlights brochure relating to the plan and not the governing document for the Citigroup benefit plan. The plan summary provides in pertinent part that "[a]s long as a terminated disabled employee remains disabled, he/she has the option to continue medical coverage ...." Dkt. #18, Exhibit A. In denying plaintiff's appeal of her request for medical benefits, Citigroup stated in its March 24, 2003 letter, "[o]nly active fulltime employees or those who qualify for and receive disability pay from a Citigroup Inc. Disabilities Plan qualify for continued Citigroup Inc. medical benefits." Dkt. #15-12.

The plan at issue does provide for "continuing coverage" under certain enumerated circumstances relating to disability and length of service with Travelers. As reflected in Travelers' counsel's June 6, 2002 letter to plaintiff, Citigroup's decision to deny plaintiff's request for reinstatement of benefits was premised on the determination that she did not meet the criteria required in the plan to receive continuation of her benefits, *to wit*, records did not indicate that plaintiff was out on either short term or long term disability or that she was in disability status at the time of her resignation from Travelers.

In opposition to defendant's motion for summary judgment, plaintiff argues that the decision to deny her request for medical benefits was arbitrary and capricious because defendant "disregarded the facts" and "denied her claim without ever investigating whether [she] was actually still employed by the company as of the effective date of the Agreement, on October 26, 2001." Dkt. #18, pp.5-6. Plaintiff's counsel's bare, conclusory allegations that plaintiff's claim was denied without an investigation, without more, is insufficient to defeat Citigroup's motion for summary judgment. The Settlement Agreement unmistakably evidences that plaintiff voluntarily resigned from her employment in exchange for the sum of $125,000. Additionally, there is no evidence before this Court to suggest that plaintiff otherwise satisfied the criteria to qualify for the continuation of benefits. Based on the record before this Court, this Court finds that Citigroup's decision to deny plaintiff's request to reinstate her medical coverage was not arbitrary and capricious.

## CONCLUSION

For the foregoing reasons, Citigroup Inc.'s motion for summary judgment (Dkt. #15) is **GRANTED**.

**SO ORDERED.**

DATED: Buffalo, New York
June 23, 2009

                                        **s/ H. Kenneth Schroeder, Jr.**
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**